YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* FLOYD SALLIS.

[42 South. Rep., 202.]

1. RAILROADS. *Code* 1892, § 3561. *Cattle guards and stock gaps.*

Code 1892, § 3561, providing that a railroad company shall construct necessary or proper stock gaps and cattle guards where its track passes through inclosed land, is not applicable unless the land is substantially enclosed.

2. SAME. *Instructions.*

Upon the trial of a case under said statute the defendant is entitled to instructions relieving it from liability if plaintiffs' fence was so dilapidated that cattle guards and stock gaps would not have prevented live stock entering his premises.

FROM the circuit court of Sunflower county.

HON. A. McC. KIMBROUGH, Judge.

Sallis, the appellee, was the plaintiff in the court below, and the railroad company, the appellant, was defendant there. From a judgment in favor of plaintiff the railroad company appealed to the supreme court.

The suit was to recover a statutory penalty, Code 1892, § 3561, for the railroad company's failure to maintain proper stock gaps and cattle guards where its track passed through

inclosed land, and for damages to plaintiffs crops caused by live stock, resulting from the failure.

The code section is as follows: "It is the duty of every railroad company to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land, and to make and maintain convenient and suitable crossings over its track for necessary plantation roads. For any failure so to do, the railroad company shall be liable to pay two hundred and fifty dollars, to be recovered by the person interested."

It appeared from the plaintiff's testimony that the defendant's railroad track runs northward through the land described in the declaration in which plaintiff had a leasehold interest; there was a wire fence, built by appellee, along the southern boundary of the land, and at right angles with the track, but at its intersection with the railroad right of way the fence turned northward on each side of the track, and extended along the right of way, parallel with the road bed, for a distance of seventy-five or one hundred yards to a railway trestle, to the southern end of which the wires of the fence were fastened. At night and at other times when plaintiff could not prevent the same, cattle entered the premises, passing along the railroad right of way, there being no cattle guard or gap to prevent their entrance at the point where the railroad track passed upon the land; and when near the trestle cattle would jump over the fence into plaintiff's fields of growing corn and cotton, and damage the crops to a great extent.

The appellant company introduced testimony tending to show that appellee's fence was defective in many places other than along the right of way, being composed merely of three wires attached to posts at least fifteen feet apart, and in some places merely tacked to saplings; that on the eastern boundary of appellee's leased premises the wires of the fence were tacked to trees at least fifty feet apart in places where the fence crossed

brakes and marshes, and that as a result it was very easy for the cattle to enter upon the land. Appellant contended that the land was not inclosed with a good, substantial fence, as contemplated by the statute; and that under the circumstances there could be no liability upon appellant, inasmuch as the damage to the crops would have resulted with or without cattle gaps.

The court granted a peremptory instruction in favor of the appellee, Sallis, for the statutory penalty of two hundred and fifty dollars; refused the instructions asked by the appellant company, referred to in the opinion; the granting of the peremptory instruction and refusal of the instructions asked by appellant were assigned for error. The instructions refused are as follows:

"(2) The court instructs the jury that it is the duty of every railroad to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land, and, if they believe from the evidence that the land of the plaintiff was not inclosed at the time this suit was instituted, then they will find for the defendant.

"(5) The court instructs the jury that it is only the duty of every railroad company to construct and maintain necessary stock gaps and cattle guards where its track passes through inclosed land, and if you believe from all the evidence in this case that a portion of the fence around the land in controversy was down, or in such a dilapidated condition as to make the construction and maintenance of stock gaps and cattle guards unnecessary, then they will find for the defendant.

"(6) The court instructs the jury that it is the duty of every railroad company to construct and maintain all necessary or proper stock gaps and cattle guards where its track passes through inclosed land, and if the jury believe from the evidence that defendant's track did not pass through inclosed land of

plaintiff at the time of the alleged damage, the jury will find for the defendant."

In addition to the verdict for the statutory penalty, rendered under the peremptory instruction, the jury awarded a verdict for appellee for $100 for actual damage. The court below overruled the railroad company's motion for a new trial.

*C. N. Burch,* and *Mayes & Longstreet,* for appellant.

The statute on which this suit is based does not apply to a case like this, in which the land is not substantially inclosed by a fence or other natural objects taking the place of a fence. Penal statutes must be most strictly construed.

It was proven by the appellant company that for most of the time during which appellee contended the depredations of stock took place the land had been inclosed by a wire fence in many places tacked to saplings; in some places attached to posts situated at least fifteen feet apart; that on the eastern portion of the place the fence ran through a cypress brake where the three wires, of which the fence at such part was composed, were tacked to trees fifty to sixty feet apart; although it must be conceded that in this brake this construction, according to different witnesses, was sufficient, because there was water of two feet or more in depth there in places. It was further proven that for a part of the crop season the fence was broken down. The appellee, Sallis, himself admits, as shown by his testimony, that for a part of the season the land was not inclosed with a substantial fence.

It was undisputed that on either side of the right of way, beginning at the point where the railroad entered the land, there was a fence running northward along the boundary of the right of way for seventy-five yards or more to a trestle. This trestle itself acted as a stock gap. When we consider the above, and also the further testimony offered by the appellant company to the effect that in some places the fence was made of one wire only, and in other places of two or three wires which

were so slack and loose that animals could easily get in and out of the cultivated fields, it is hard to determine how the court below could have granted the peremptory instruction in favor of the appellee for the statutory penalty.

The court below erred in refusing the instructions asked by the appellant company, numbered two, five and six, whereby it was sought to explain to the jury the exact circumstances which must have been shown by the appellee, Sallis, to entitle him to recover either the statutory penalty or actual damages. The error complained of is that the railroad company had a right under instructions such as these, with the possible exception of the instruction numbered two, to have the jury determine from the whole evidence whether the land was inclosed, and whether the testimony offered by appellee was true. The court below, in refusing these instructions, took from the jury the right to pass on this testimony, and as these instructions are proper and legal, and bear directly on the vital and cardinal points in controversy, the court's refusal to grant them was clearly erroneous.

When the statute declares that the railroad company shall be penalized for not constructing and maintaining proper stock gaps and cattle guards where its track enters inclosed lands, it means lands actually and entirely, not partially, inclosed, and inclosed by a substantial fence, not necessarily a lawful fence under the statute defining a lawful fence, but a fence strong enough, in the judgment of practical men, to turn cattle away from crops if the opening made in the inclosure for the entering track is properly protected. It will not suffice, to warrant recovery of the penalty, that two or three sides of a place are inclosed while another side is left uninclosed.

*Chapman & McInnis,* for appellee.

The case should be affirmed, for the evidence shows that the land was inclosed, within the purview of the statute. The railroad runs northward through the appellee's premises. Along

the southern boundary of these premises was a fence, built on both sides of the point where the track entered the premises. The general line of the fence was east and west, except where it intersected the railroad right of way. At this point, on each side of the track, the fence turned northward and ran along the edge of the right of way for about seventy-five or one hundred yards, to a railroad trestle, to the end of which the wires of the fence were attached. This fence was built by appellee and those from whom he leased. Where the railroad entered the land there was a space on the right of way on each side of the cross-ties which, by reason of the railroad company's failure to construct a cattle gap, became a passageway for cattle to enter, pass a short distance northward, mount the railroad dump, and jump over appellee's fence into his cultivated fields.

There is some probability that the fences on each side of the railroad right of way, running northward to the trestle, were defective. But it makes no difference what the condition of these fences was. Had the railroad company placed a stock gap or cattle guard where the railroad track entered the premises, at the point where the fences turned and ran northward on intersecting the right of way, the cattle could not have gotten into the passageway between the cross-ties and the fence, on each side of the track. The instant the cattle passed the point where the general line of fence, running east and west, intersected the right of way, the railroad company became liable. It was the duty of the company to construct a cattle gap at this point of intersection, and, if necessary, to erect wings from the gap out to the points where the fence on each side of the right of way turned to the northward. As such was the duty of the appellant, it cannot plead that the appellee, Sallis, failed to inclose his lands, or that the land is not inclosed because after the fences on the sides of the right of way for the short distance of the seventy-five or one hundred yards running up to the trestle would not stop cattle. A railroad company

must either build a cattle gap or fence its right of way. If the appellee, Sallis, had constructed no fence at all along the right of way northward to the trestle, the company would be liable for the depredations of cattle and for the penalty. *Kansas City, etc., Railroad Co.* v. *Spencer,* 72 Miss., 491 (s.c., 17 South. Rep., 178).

While it is true that there was testimony that the fence around the premises was defective and out of repair in several places other than where the same ran northward along the right of way to the trestle, and that cattle could have broken through the fence at different points, yet the evidence, indisputable, shows that the cattle did not get into the fields anywhere except at the point where the railroad track entered the premises, which is to say, at the point where the cattle gap should have been.

A temporary break or defect in a fence will certainly not defeat the right of the party interested to recover the statutory penalty; even though the fence be temporarily washed away by high water, or knocked down by frightened mules or cattle, the land is, in contemplation of law, inclosed. The statute does not require that the party interested shall perform the impossible feat of building a fence which will never get out of repair.

From where the track entered the premises to the trestle, some seventy-five or more yards north, the space bounded by the fences on each side was a narrow pocket or *cul de sac* in which cattle could easily congregate, especially at night. In addition to the probable damage to appellee, these cattle so near the track would easily become a menace to the traveling public, in view of the possibility of railroad wrecks from cattle upon the track. Not only the land owner, but the public in general, had a right to demand that a cattle gap be constructed.

WHITFIELD, C. J., delivered the opinion of the court.

The sole question in this case is this: Does the statute apply to a case in which the land is not substantially inclosed, either by a fence or other natural objects taking the place of a fence?

The statute is one visiting a penalty, and must be strictly construed; and we think that it is perfectly clear that this penalty cannot be recovered unless the land was substantially inclosed as indicated. The instructions numbers two, five, and six, were correct propositions of law, and should have been given on the facts shown in this record.

*Reversed and remanded.*